UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER CARTER,<br><br>          Petitioner,<br><br>  v.<br><br>TERRI MacDONALD,<br><br>          Respondent. | Case No. CV 16-07231 SJO (AFM)<br><br>**ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

      Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, records on file and the Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a *de novo* review of those portions of the Report to which objections have been made.

      In her Objections, petitioner contends that she is entitled to an exception to the statute of limitations of 28 U.S.C. § 2244(d) based on purportedly new evidence of her actual innocence. The Court exercises its discretion to consider this argument. *See Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002). However, the Court concludes that petitioner is not entitled to an equitable exception to the statute of limitations on the basis of actual innocence.

**A.     Background.**

After trying to sell methamphetamine to an undercover detective, petitioner was convicted of offering to sell a controlled substance and possession for sale of a controlled substance and was sentenced to probation for three years.  The crux of petitioner's actual innocence argument is that she has new evidence showing that text messages allegedly exchanged between her and the undercover detective were in fact never exchanged.

Based on the Court's independent review of the record, the following factual summary from the California Court of Appeal's opinion is a fair and accurate summary of the evidence presented at petitioner's trial:

> On May 15, 2012, Detective David Chapman of the Los Angeles Police Department posted an advertisement on the craigslist Web site looking for "Tina," which is a word commonly used in drug transactions to mean methamphetamine.  The title of the advertisement was "Have you seen Tina?"  It stated he had been looking for his friend Tina all day and asked if anyone had seen her.  He included an e-mail address to which responses could be sent.  On May 20, 2012, the detective received an e-mail response to the advertisement saying, "Yes, cash only."  After some text message exchanges regarding how much Chapman wanted and the price, the detective and [petitioner] arranged to meet at a CVS Pharmacy parking lot in Hollywood so that he could buy $200 worth of methamphetamine.
>
> That evening the detective and other members of the narcotics detail waited for [petitioner] in the parking lot.  As [petitioner] was driving through the parking lot, the detective called the same number he had been texting.  When [petitioner] answered the phone, the detective asked where she was and she stated she was around the corner.  He then saw [petitioner] drive out of the lot.  A patrol car

pulled over [petitioner] and officers took her into custody. A cell phone was removed from the front seat of her car and the detective viewed several text messages on that phone that he had sent.

[Petitioner's] purse, which was located in the car, contained three bindles of methamphetamine and $66 in cash. Detective Chapman opined the bindles had a combined street value of between $175—$250. He also opined the methamphetamine found in [petitioner's] possession was for sale.

Petitioner's new evidence about the text messages consists of a CD-ROM that includes, in pertinent part, an Analyzed Evidence Report of the contents of petitioner's cell phone, prepared by an analyst named Eric Wahlberg. The prosecution intended to call Wahlberg to testify about his forensic analysis of the phone's contents, but a family emergency prevented Wahlberg's appearance. (2 RT 191-92.) Instead, the prosecutor's evidence of the text messages relied on the testimony of Detective Chapman ("Chapman").

### B. Analysis.

Petitioner's claim of actual innocence based on Wahlberg's report fails for each of the following independent reasons. First, nothing in Wahlberg's report is exonerating, and parts of it are in fact consistent with the prosecutor's evidence, which was overwhelming and consisted of the following. When petitioner was arrested, Chapman saw on her cell phone two text messages that he had sent to her from his LAPD phone number. (1 RT 121, 129.) Chapman also transcribed all of his text messages with petitioner, stored in his own phone, in a police report and testified as to their contents. (1 RT 104-13; 2 RT 136-37.) Chapman was able to turn on petitioner's cell phone and retrieve 20 received messages. (2 RT 219-27; 235-36.) Photographs were taken of the phone's screen showing these messages,

1  and four of the screen photos were marked as trial exhibits. (2 RT 232.)
2  Petitioner's Exhibit B contains these 20 screen photos taken by Chapman, and a
3  comparison revealed the same 20 messages that Wahlberg included on his log of
4  received messages from petitioner's phone. As testified to by Chapman and shown
5  in the photos, petitioner's phone included two messages received from Chapman's
6  LAPD phone. (2 RT 221-23.) Chapman also identified two other messages in the
7  phone that indicated petitioner possessed crystal meth for sale. (2 RT 223-26.) On
8  cross-examination, Chapman did admit that the sent box on petitioner's phone was
9  empty, and thus no messages she had sent were evident. (2 RT 236.) Chapman
10 also admitted that petitioner's phone did not contain all of messages she had
11 received from him. (2 RT 232-36.) However, nothing in Wahlberg's report called
12 into question the prosecutor's evidence of the text messages, and parts of his report
13 were consistent with the evidence.

14 Second, Wahlberg's report contained additional inculpatory evidence that
15 was not presented at trial. His report included a list of Outgoing Calls
16 demonstrating that petitioner had called Chapman's LAPD phone number
17 (13232532521), further confirming petitioner's communications with Chapman
18 before her arrest.

19 Third, the prosecutor did not prove petitioner's guilt with the text messages
20 alone, but with other independent evidence. *See Smith v. Baldwin*, 510 F.3d 1127,
21 1142 (9th Cir. 2007) (rejecting actual innocence claim where a "reasonable juror
22 would still have sufficient evidence to believe that [petitioner] was more likely than
23 not" the perpetrator); *see also Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011)
24 (an actual innocence claim must be assessed for its likely impact on reasonable
25 jurors "in light of the complete record"). The prosecutor presented evidence that
26 petitioner had emailed Chapman in response to his craigslist ad with a message
27 stating, "Yes, cash only." (1 RT 94.) When petitioner arrived at the parking lot,
28 she was talking on the phone to Chapman, who was waiting for her in the parking

lot and saw her talking to him. (1 RT 164-65, 170.) The car petitioner arrived in was registered to her. (2 RT 228.) When petitioner was arrested, Chapman and another detective discovered three bindles of methamphetamine in her possession. (1 RT 63-64, 120.) The methamphetamine weighed 0.33 grams, 0.46 grams, and 1.12 grams, respectively. (1 RT 180.) Chapman opined that the drugs had a street value of $175 to $250 and were in petitioner's possession for the purpose of sale. (1 RT 126, 127.)

In sum, petitioner falls far short of showing by new evidence that it is more likely than not that no reasonable juror would have convicted her in light of Wahlberg's report. An equitable exception to the statute of limitations for actual innocence is not warranted.

## ORDER

IT THEREFORE IS ORDERED that (1) the Report and Recommendation of the Magistrate Judge is accepted and adopted; (2) respondent's Motion to Dismiss the Petition as untimely is granted (ECF No. 17); and (3) Judgment shall be entered dismissing this action with prejudice.

DATED: 3/15/17

*S. James Otero*

_____
S. JAMES OTERO
UNITED STATES DISTRICT JUDGE